

U.S. Small Business Administration

# NOTE

| SBA Loan # | PLP 24540750-05 |
|---|---|
| SBA Loan Name | Planet Smoothie |
| Date | May 31, 2007 |
| Loan Amount | $242,000.00 |
| Interest Rate | Variable |
| Borrower | Jorwan Investments, LLC |
| Operating Company | N/A |
| Lender | Community South Bank |

### 1. PROMISE TO PAY:
In return for the Loan, Borrower promises to pay to the order of Lender the amount of Two Hundred Forty-two Thousand and 00/100 Dollars, interest on the unpaid principal balance, and all other amounts required by this Note.

### 2. DEFINITIONS:
"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.
"Guarantor" means each person or entity that signs a guarantee of payment of this Note.
"Loan" means the loan evidenced by this Note.
"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.
"SBA" means the Small Business Administration, an Agency of the United States of America.

### 3. PAYMENT TERMS:
Borrower must make all payments at the place Lender designates. The payment terms for this Note are:
The interest rate on this Note will fluctuate. The initial interest rate is 10.75% per year. This initial rate is the prime rate on the date SBA received the loan application, plus 2.50%. The initial interest rate must remain in effect until the first change period begins.
Borrower must pay principal and interest payments of $3,300.00 every month beginning one month from the month of initial disbursement on this Note; payments must be made on the ___5th___ calendar day in the months they are due.
Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.
The interest rate will be adjusted every calendar quarter (the "change period").
The "Prime Rate" is the prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in the Wall Street Journal on the next business day.
The adjusted interest rate will be 2.50% above the prime rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.
Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.
If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.
Loan Prepayment:

SBA Form 147 (06/02/03) Version 4.1



Notwithstanding any provision in this Note to the contrary:

Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

a. Give Lender written notice;

b. Pay all accrued interest; and

c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years from date of initial disbursement.

Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

4. **DEFAULT:** Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A. Fails to do anything required by this Note and other Loan Documents;

B. Defaults on any other loan with Lender;

C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G. Fails to pay any taxes when due

H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I. Has a receiver or liquidator appointed for any part of their business or property;

J. Makes an assignment for the benefit of creditors;

K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5. **LENDER'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, Lender may:

A. Require immediate payment of all amounts owing under this Note;

B. Collect all amounts owing from any Borrower or Guarantor;

C. File suit and obtain judgment;

D. Take possession of any Collateral; or

E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. **LENDER'S GENERAL POWERS:** Without notice and without Borrower's consent, Lender may:

A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. **WHEN FEDERAL LAW APPLIES:** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control.

penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. **SUCCESSORS AND ASSIGNS:** Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. **GENERAL PROVISIONS:**
   A. All individuals and entities signing this Note are jointly and severally liable.
   B. Borrower waives all suretyship defenses.
   C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.
   D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.
   E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.
   F. If any part of this Note is unenforceable, all other parts remain in effect.
   G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. **STATE-SPECIFIC PROVISIONS:**
    NONE

11. **BORROWER'S NAME(S) AND SIGNATURE(S):**
By signing below, each individual or entity becomes obligated under this Note as Borrower.

BORROWER:

Jorwan Investments, LLC

By _[signature]_  
Jorge H. Manrique, Manager/Member of Jorwan Investments, LLC

By _[signature]_ Wanda J. Davila  
Wanda L. Davila, Manager/Member of Jorwan Investments, LLC



U. S. DEPARTMENT OF THE TREASURY
FINANCIAL MANAGEMENT SERVICE
WASHINGTON, D. C.

ACTING ON BEHALF OF
U. S. SMALL BUSINESS ADMINISTRATION – ("SBA")
CERTIFICATE OF INDEBTEDNESS

Debtor Name(s) and
Address (es):

Jorwan Investments, L.L.C. (d.b.a. Planet Smoothies)
898 East Washington Street
Orlando, FL 32801

**Total debt due United States as of January 13, 21012**
   **Principal: $228,823.12**
   **FMS & DOJ fees: $  77,847.04**
   (pursuant to 31 U.S.C. 3717(e) and 3711(g)(6), and 28 U.S.C. 527)
   TOTAL: $306,670.16

*As per the program profile provided by SBA to FMS, no prejudgment interest is to be accrued on this debt by either FMS or DOJ.

I certify that the U. S. Small Business Administration (SBA) records show that the co-debtors named above are indebted to the United States in the amount stated above

The claim arose in connection with the debtor's March 2009 default on a $242,000.00 SBA-insured loan.

CERTIFICATION:  Pursuant to 28 USC ss. 1746, I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief based upon information provided by the U. S. Small Business Administration.

Date: 01/13/2012                              _____
                                              Regina Crisafulli
                                              Financial Program Specialist
                                              U.S. Department of the Treasury
                                              Financial Management Service


EXHIBIT B

**BECKER & POLIAKOFF**

121 Alhambra Plaza, 10th Floor
Coral Gables, Florida 33134
Phone: (305) 262-4433  Fax: (305) 442-2232

ADMINISTRATIVE OFFICE
3111 STIRLING ROAD
FORT LAUDERDALE, FL 33312
954.987.7550

WWW.BECKER-POLIAKOFF.COM
BP@BECKER-POLIAKOFF.COM

FLORIDA OFFICES
BOCA RATON
FORT MYERS
FORT WALTON BEACH
HOLLYWOOD
HOMESTEAD
KEY WEST *
MELBOURNE *
MIAMI
NAPLES
ORLANDO
PORT ST. LUCIE
SARASOTA
TALLAHASSEE
TAMPA BAY
WEST PALM BEACH

U.S. & GLOBAL OFFICES
RED BANK, NEW JERSEY
NEW YORK, NEW YORK
NASSAU, BAHAMAS
PRAGUE, CZECH REPUBLIC

* by appointment only

March 6, 2012

Reply To:
Adam Cervera, Esq.
Direct dial: (305) 262-4433
ACervera@becker-poliakoff.com

**BY CERTIFIED MAIL
RETURN RECEIPT REQUESTED
& REGULAR U.S. MAIL**

Jorwan Investments, LLC
d.b.a Planet Smoothie
c/o Jorge Manrique
898 E. Washington Street
Orlando, FL 32801

Jorwan Investments, LLC
d.b.a Planet Smoothie
c/o Jorge Manrique
11293 Spinning Reel Cir
Orlando, FL 32825

Re:  **Default on U.S. Small Business Administration Loan (# PLP 24540750-05) to Jorwan Investments, LLC (d.b.a Planet Smoothie)**

Dear Mr. Manrique:

Please be advised that the undersigned represents the United States Small Business Administration ("SBA") in reference to the above captioned loan (the "Loan").

On or about May 31, 2007, Jorwan Investments, LLC., d.b.a Planet Smoothie ("Borrower") executed in favor of SBA that certain Promissory Note ("Note") in the principal amount of $242,000.00. In addition, a Commercial Security Agreement ("Agreement") was signed and executed by the Borrower. Said Agreement provided various forms of collateral in the event of a default by Borrow. We refer to the Note and Agreement as the "Loan Documents".

The Loan Documents are presently in default based upon your failure to pay the March 2009 monthly payment and all subsequent payments thereafter. The following amounts are due and owing and demand is hereby made upon you to pay the following amounts:



EXHIBIT C

Borrower
March 6, 2012
Page 2

|  |  |
|---|---|
| Principal | $228,823.12 |
| FMS & DOJ Fees | $77,847.04 |
| Legal Fees | $1,000.00 |
|  | **$307,670.16 ("Total Sum").** |

If the Total Sum is not paid by March 19, 2012, SBA reserves the right to pursue all legal remedies specified within the Loan Documents, including but not limited to the filing of a lawsuit against you seeking damages under the Note and seeking to enforce the terms of the Agreement. Any lawsuit would include a claim for the Total Sum against the Borrower.

You may deliver payment to my office by certified check or wire transfer.

PLEASE GOVERN YOURSELF ACCORDINGLY

Sincerely,

Adam Cervera, Esq.

cc:   Steven Davis, Esq.
      Isis Gutierrez

ACTIVE: U06092/093890:3739515_1




# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Loan No | Officer |
|---|---|---|---|
| $242,000.00 | 05-31-2007 | 7280 | ADH |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** Jorwan Investments, LLC
1617 WP Ball Boulevard
Sanford, FL 32771

**Lender:** Community South Bank
625 S. Gay Street
Suite 450
Knoxville, TN 37902

THIS COMMERCIAL SECURITY AGREEMENT dated May 31, 2007, is made and executed between Jorwan Investments, LLC ("Grantor") and Community South Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

A purchase Money Interest in newly acquired Inventory in the amount of $3,000.00. All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

Some or all of the Collateral may be located on the following described real estate:

1617 WP Ball Boulevard, Sanford, FL 32771

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a

1

**EXHIBIT** D

continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Florida, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

2   *JH/WJO*

Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U S C Section 6901, et seq., the Hazardous Waste Management Substances Act of 1998, T.C.A., 68-212-201, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Jorwan Investments, LLC.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Community South Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by Jorwan Investments, LLC in the principal amount of $242,000.00 dated May _____, 2007, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED MAY __31__, 2007.

GRANTOR:

JORWAN INVESTMENTS, LLC

By: _____  By: _____
Jorge H. Manrique, Manager/Member of Jorwan    Wanda I. Davila, Manager/Member of Jorwan
Investments, LLC                               Investments, LLC

6